SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| MICHAEL McCLUNG, a citizen and qualified elector in the State of Arizona, | ) ) ) ) | Arizona Supreme Court No. CV-10-0183-AP/EL |
| Plaintiff-Appellant, | ) ) | Maricopa County Superior Court No. CV2010-019503 |
| v. | ) ) | |
| HON. KEN BENNETT, in his official capacity as Arizona Secretary of State, HON. HELEN PURCELL, in her official capacity as Maricopa County Recorder, MARICOPA COUNTY BOARD OF SUPERVISORS in their official capacity, HON. LAURA DEAN-LYTLE in her official capacity as Pinal County Recorder, PINAL COUNTY BOARD OF SUPERVISORS in their official capacity, HON. F. ANN RODRIGUEZ in her official capacity as Pima County Recorder, PIMA COUNTY BOARD OF SUPERVISORS in their official capacity, HON. SUZANNE SAINZ in her official capacity as Santa Cruz County Recorder, SANTA CRUZ COUNTY BOARD OF SUPERVISORS in their official capacity, HON. ROBYN POUQUETTE in her official capacity as Yuma County Recorder, YUMA COUNTY BOARD OF SUPERVISORS in their official capacity, HON. SHELLY BAKER in her official capacity as La Paz County Recorder, LA PAZ COUNTY BOARD OF SUPERVISORS, in their official capacity, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **O P I N I O N** |
| Defendants-Appellees, | ) ) | |
| And | ) | |

JOSEPH SWEENEY, )
)
Defendant-Appellee. )
_____ )

Appeal from the Superior Court in Maricopa County
The Honorable John C. Rea, Judge

**AFFIRMED**
_____

WILLIAM EDWARD CONNER, L.L.M.                                    El Mirage
     By   William Edward Conner
Attorneys for Michael McClung

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                           Phoenix
     By   Mary R. O'Grady, Solicitor General
          Barbara A. Bailey, Assistant Attorney General
          James E. Barton, II, Assistant Attorney General
Attorneys for Ken Bennett

BARBARA LAWALL, PIMA COUNTY ATTORNEY                               Tucson
     By   Daniel S. Jurkowitz, Deputy County Attorney
Attorneys for F. Ann Rodriguez and
Pima County Board of Supervisors

MARICOPA COUNTY OFFICE OF                                        Phoenix
GENERAL LITIGATION SERVICES
     By   Laurence G. Tinsley, Jr., Senior General Counsel
          Colleen Connor, Assistant General Counsel
          Karen J. Hartman-Tellez, Assistant General Counsel
Attorneys for Helen Purcell,
Maricopa County Board of Supervisors,
Laura Dean-Lytle, Pinal County Board of Supervisors,
Suzanne Sainz, Santa Cruz County Board of Supervisors,
Robyn Pouquette, Yuma County Board of Supervisors,
Shelly Baker, and La Paz County Board of Supervisors

Joseph Sweeney                                                    Tucson
In Propria Persona
_____

**B E R C H**, Chief Justice

¶1     On June 28, 2010, this Court issued an order affirming

the superior court's judgment in this election case.  We now explain the basis for our decision.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

¶2        Michael McClung challenged signatures on Joseph Sweeney's nominating petitions to appear on the ballot for the United States House of Representatives for Congressional District 7 (CD-7).  Sweeney needed 381 valid signatures to qualify for the Republican primary ballot; he turned in petitions bearing 577.  McClung's complaint challenged 282 signatures, identifying them by petition and line number and stating the reason for each challenge.  The county recorders reviewed the challenged signatures for disqualification and issued reports to all parties on June 14.  The Pima County Recorder invalidated 188 signatures and the Santa Cruz County Recorder invalidated three, leaving Sweeney with 386 valid signatures, five more than the minimum necessary to qualify for the ballot.

¶3        Three days later, on June 17, the superior court held an evidentiary hearing at which McClung contested nine signatures not disqualified by the Pima County Recorder.  For two of the signatures, as alleged in the complaint, McClung disputed that the person signing was registered in CD-7.  As to seven other signatures, McClung changed the basis of the challenge without amending his complaint or otherwise giving

- 3 -

advance notice to the other parties. His complaint alleged that these signatures were not those of registered voters, but at the hearing, he argued for the first time that the seven signatures were from persons who lived "out of district."

¶4    In denying McClung's request to invalidate the signatures, the trial judge refused to allow McClung to urge "a ground for challenge that is completely different from the challenge alleged in the complaint." Allowing such a challenge, he concluded, would deny due process to Sweeney because he "had no advance notice or opportunity to present evidence" on the new ground McClung advanced. The judge further observed that, had he reached the merits of the new challenges, he would have invalidated only five of the signatures, leaving Sweeney with 381 valid signatures, just enough to qualify for the ballot.

¶5    We have jurisdiction over McClung's appeal under Arizona Revised Statutes (A.R.S.) § 16-351(A) (2006) and Arizona Rule of Civil Appellate Procedure 8.1(h).

## II. DISCUSSION

¶6    The superior court judge concluded that McClung's change of theory as the hearing began deprived Sweeney of a meaningful opportunity to prepare a defense. McClung claims that the court erred by so ruling.

¶7    Election challenges must be initiated and completed within an abbreviated time frame to enable public officials to

- 4 -

check signatures, verify petitions, and print and disseminate ballots within the time limits set by state and federal law. For that reason, among others, we presume the validity of nominating petitions that have been circulated, signed, and filed, and we assign to the party challenging a petition the burden of proving by clear and convincing evidence that a signature was not that of a qualified elector. *Jenkins v. Hale*, 218 Ariz. 561, 562-63 ¶ 8, 190 P.3d 175, 176-77 (2008).

¶8 But "the short time period allotted for actions challenging nomination petitions may not [be permitted to] deprive a defendant of his or her opportunity to present [a] case in opposition to that of the plaintiff." *Mandraes v. Hungerford*, 127 Ariz. 585, 587-88, 623 P.2d 15, 17-18 (1981). "Due process requires that a party have an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 588, 623 P.2d at 18.

¶9 Any party challenging the nomination of a candidate to office must specify "the petition number, line number and basis for the challenge for each signature being challenged." A.R.S. § 16-351(A). McClung did initially specify grounds for challenging 282 signatures. Those listed grounds provided Sweeney with the opportunity to prepare to rebut those grounds at the June 17 hearing. At the hearing, however, McClung attempted to assert new grounds for challenging signatures

without having given notice to Sweeney or the other parties.

¶10      The trial judge, who was in the best position to assess the situation, determined that notice was inadequate, prejudicing Sweeney by depriving him of an opportunity to prepare to meet McClung's new allegations. *See State v. Smith*, 215 Ariz. 221, 233 ¶ 55, 159 P.3d 531, 543 (2007) (noting "the deference given [to] prejudice assessments" in making a due process determination). The record here justifies the judge's concern. McClung had sufficient information, time, and opportunity before the hearing to alert the other parties to the changed grounds for his challenges so that they would have a meaningful opportunity to prepare to rebut them, but he failed to give appropriate notice.

¶11      McClung relies on *Lubin v. Thomas*, 213 Ariz. 496, 499 ¶ 19, 144 P.3d 510, 513 (2006), to support his argument that one may challenge signatures on any ground of invalidity, whether or not previously raised. He reasons that if a county recorder may take the initiative to strike signatures on grounds not urged by the challenger, then the challenger may also seek to invalidate signatures on grounds not previously specified.

¶12      McClung's reliance on *Lubin* is misplaced for several reasons. First and foremost, when, as in *Lubin*, the recorder invalidates a nominating signature, it identifies the reason in a report, which provides all parties advance notice and an

opportunity to prepare to respond at the hearing on the challenge to the nominating petitions.

¶13 Second, *Lubin* merely held that "the County Recorder, in reviewing challenged nomination petition signatures, may invalidate signatures for legitimate reasons other than those specifically alleged in the challenger's complaint." *Id.* It does not obligate a county recorder to search for defects other than those asserted by the challenger.[1]

¶14 Finally, nothing in *Lubin* authorizes a party to belatedly identify new grounds for challenge without giving notice to the affected candidate. Under A.R.S. § 16-351(A), the challenger must specify the reasons for challenging particular signatures. The recorders' reports identify the bases for invalidating signatures. These procedures provide notice to all parties, permit time to prepare a response, and prevent the ambush that might otherwise occur at hearings on nomination challenges. If the challenger wishes to contest signatures for reasons other than those identified in the complaint or recorders' reports, he must notify the affected parties and the court. Here, McClung's failure to advise Sweeney of the

---

[1] Although *Lubin* does not impose a legal obligation on county recorders to investigate reasons for disqualification in addition to the grounds alleged, we do not suggest that recorders should not do so when time and other circumstances permit, nor would we condone disregard of obvious flaws in petitions, even when not specifically set forth in a challenger's complaint.

specific grounds of challenge deprived Sweeney of the opportunity to prepare and consequently impaired his right to a fair hearing.

¶15    Apart from the due process concerns, we would deny McClung's appeal for two additional reasons. First, he has not established that the trial court erred in concluding that four of the questioned signatures were valid, which would leave Sweeney with sufficient signatures to qualify for the ballot. *See Jenkins*, 218 Ariz. at 562-63 ¶ 8, 190 P.3d at 176-77 (noting that challenger bears the burden of proof by clear and convincing evidence). Moreover, McClung's belated prosecution of this appeal, which he filed on the last day of the statutory deadline, would warrant dismissal on the grounds of laches, because his dilatory conduct left Sweeney with only one day to file his response brief, jeopardized election officials' timely compliance with statutory deadlines, *see* A.R.S. § 16-543.01(C) (2006); 42 U.S.C. § 1973ff-1 (2003), and required the Court to decide this matter on an unnecessarily accelerated basis, *see Lubin*, 213 Ariz. at 497-98 ¶¶ 9-11, 144 P.3d at 511-12 (quoting *Mathieu v. Mahoney*, 174 Ariz. 456, 459, 460, 851 P.2d 81, 84, 85 (1993) (citation omitted), for proposition that delay may cause courts to "steamroll through . . . delicate legal issues in order to meet" ballot printing deadlines, which may "seriously compromise[]" judicial decision making).

## III. CONCLUSION

¶16    For the reasons noted, we affirm the judgment of the trial court.

_____
Rebecca White Berch, Chief Justice


CONCURRING:


_____
W. Scott Bales, Justice


_____
A. John Pelander, Justice