**STATE of Arizona ex rel. Moise BERGER, Maricopa County Attorney, Petitioner,**

v.

**The SUPERIOR COURT of the State of Arizona, IN AND FOR the COUNTY OF MARICOPA, the Honorable Charles D. Roush, Judge thereof; and Vergil Lee PATE, Real Party in Interest, Respondents.**

No. 11315.

Supreme Court of Arizona, In Banc.

Sept. 6, 1973.

513 P.2d 935

**Gary Lee TRIANO, Appellant and Cross-Appellee,**

v.

**John W. MASSION, II, Appellee and Cross-Appellant.**

No. 11306.

Supreme Court of Arizona, In Banc.

Sept. 4, 1973.

Russo, Cox, Dickerson & Cartin, P. C. by Thomas G. Cox, Tucson, for appellant and cross-appellee.

Johnson, Hayes & Dowdall, Ltd. by John R. Even, Tucson, for appellee and cross-appellant.

Frederick S. Dean, Asst. City Atty., Tucson, for Donald L. DeMent, Tucson City Clerk.

CAMERON, Vice Chief Justice.

This is a direct appeal and cross-appeal pursuant to § 16–306, subsec. A, A.R.S. from an adverse decision challenging the filing of nomination petitions for the Tucson City Council.

We are called upon to answer three questions on appeal:

1. Is the one-year residency requirement of the Tucson City Charter for city council candidates constitutional?

2. If so, do the facts support the finding of the trial court that the defendant-appellant, Gary Lee Triano, was not a legal resident of Ward III for one year immediately prior to becoming a candidate?

3. As to the cross-appeal, do the facts support the finding of the trial court that the defendant-appellant, Gary Lee Triano, had the requisite intent and was a legal resident of Ward III at the time he registered to vote in Ward III?

The facts necessary for a determination of this matter on appeal are as follows. The City Charter of the City of Tucson, Arizona, provides that candidates for city council shall be nominated from one of six wards in a primary election. After being nominated, the candidates for city councilman are then elected in a city-wide general election. Not all councilmen are elected at any one election, but run in staggered terms. In the election to be held in the fall of 1973, three city councilmen are to be elected including one from Ward III.

The City Charter provides:

"Candidates for the office of mayor and councilman of the city shall be duly qualified electors under the laws of the State of Arizona and under the provisions of this Charter, and shall have resided within, and have been a qualified elector of, the City of Tucson for not less than three years immediately prior to becoming a candidate, except that time of residence in any area and being a qualified elector thereof shall be counted as residence and electorial qualifications within the City of Tucson one year after said area becomes annexed to the City. Any candidate for councilman shall have resided in his respective ward or annexed area at least one year prior to his becoming a candidate, unless such residence has been shortened by the redistricting of the city as to wards." Section 5, Chapter XVI, Tucson City Charter.

On or about 12 June 1973, Mr. Triano moved out of his home located at 6015 East Fourth Street in Tucson, Arizona, a home into which he had moved in January of 1973, to a furnished apartment located at 2302 East Fort Lowell in Tucson, together with his wife and two small children. The house at 6015 East Fourth Street was not in Ward III, but the apartment at 2302 East Fort Lowell is located in Ward III. On 12 June 1973, his previous residence was placed on the market for sale. On 3 July 1973, Mr. Triano registered to vote in Ward III. There is no indication that Mr. Triano, within the year preceding the filing of the nomination papers, resided in an area that was redistricted into Ward III by the actions of the City Council when the wards were restructured, although he did reside in Ward III prior to 1967 for at least a year.

On 20 July 1973, Mr. Triano filed his nominating papers as a candidate for the City Council, Ward III. The plaintiff, John W. Massion, II, timely filed a petition and complaint entitled "Challenge to Nominating Petitions." After hearing evidence, the Supreior Court of Pima County held that (1) the said Gary Lee Triano had the requisite intent to and did establish his residence and domicile at 2302 East Fort Lowell in Ward III; (2) the defendant, Gary Lee Triano, had not resided within Ward III for one year prior to becoming a candidate; and (3) the one-year residency requirement of the Tucson City Charter is valid and constitutional, "there being sufficient state interest in requiring this nexus between the office holder and the people he will represent on the Council to justify this requirement."

From this ruling Gary Lee Triano appealed to this court and John W. Massion, II, cross-appealed challenging the finding that Gary Lee Triano was a resident of Ward III.

## CONSTITUTIONALITY OF THE REQUIREMENT

Triano first contends that the State statute, § 16–301 A.R.S., enacted after the City Charter of Tucson was adopted, limits the provision of the City Charter which imposes a longer residency requirement than the State law. § 16–301, subsec. A, A.R.S. states merely, " * * * A candidate for public office shall reside in the county, district, or precinct which he proposes to represent."

■■■ Municipal elections are matters of local interest and not matters of statewide concern. Strode v. Sullivan, 72 Ariz. 360, 236 P.2d 48 (1951). § 16–301 A.R.S. does not prevent the City of Tucson from requiring more stringent residency requirements than the State law requires.

■■ Triano contends further, however, that the one-year residency requirement violates the equal protection clause of the Fourteenth Amendment and is therefore unconstitutional. First, it must be recognized that the right to vote and the right to be a candidate for and to hold office are separate matters, and the State may require that a citizen meet more strict requirements to hold office than he does to vote for those offices. The United States Supreme Court case of Dunn v. Blumstein, 405 U.S.

330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) is not applicable to the case at bar since the validity of residency requirements for voters rather than for candidates was considered in that case. Although there is case law to the contrary we agree with the well-reasoned dissent of Justice Burke of the California Supreme Court:

" * * * Unquestionably, the court was greatly troubled in *Dunn* by the fact that the voter residence requirement tended to exclude many voters who were wholly qualified to exercise their franchise. But although a residence requirement may be ill-suited as a *voter*-qualification device, its value as applied to *candidates* seems unquestioned. Any person with rudimentary awareness of issues and candidates can cast his ballot, and an uninformed vote is easily cancelled by an intelligent one. But voters are not responsible for managing civic affairs and making the day-to-day decisions which municipal officials must face. * * *

"Indeed, residence requirements for candidates for public office play an important role in our state and federal constitutional schemes. For example, the President of the United States must have been a *fourteen*-year resident in this country (U.S.Const., art. II, § 1, cl. 5), a United States Senator a *nine*-year resident (id., art. 1, § 3, cl. 3), a United States Representative a *seven*-year resident (id., art. I, § 2, cl. 2). * * *." Thompson v. Mellon, 9 Cal.3d 96, 113, 107 Cal.Rptr. 20, 32–33, 507 P.2d 628, 640–641 (1973).

And a three-judge Federal District Court has stated:

"The State has a compelling interest in preventing frivolous and fraudulent candidacy by persons who have had no previous exposure to the problems and desires of the electorate of a representative district. The Court knows of its own knowledge that this problem has existed for many years. Absent a durational residency requirement 'carpet bagger' candidates who have no desire, as agents or representatives of the district, genuinely to acquaint themselves with the problems of a representative district and conscientiously strive for the solution thereof in the legislative halls, can be candidates.

"The State also has a compelling interest in requiring that those who expect to stand for the office of State Representative take the matter seriously and make plans for their candidacy in advance of the election date. Serious candidates do usually have well-laid plans fashioned over a period of time. The great majority of state representatives have lived in their respective districts for periods well in excess of the six months required by 14 O.S. § 108.

* * * * * *

"For the reasons above-stated the Court finds that 14 O.S. § 108 which requires that 'in order to file as a candidate for the House of Representatives in any of the representative districts, the candidate must have been a qualified registered elector in such district for at least six (6) months immediately preceding the filing period prescribed by law' is a valid statutory enactment of the Legislature of Oklahoma and complies fully with the Equal Protection of the Law clause of the Fourteenth Amendment of the Constitution of the United States." Draper v. Phelps, D.C., 351 F.Supp. 677, 683, 686 (1972). See also State ex rel. Gralike v. Walsh, 483 S.W.2d 70 (Mo.1972).

█ We find the one-year residency requirement for the office of city councilmen in the Tucson City Charter to be constitutional.

### DO THE FACTS SUPPORT THE TRIAL COURT'S FINDING?

Gary Lee Triano testified at his deposition as follows:

"Q * * * I will ask you to state your full name for the record, please.

"A Gary Lee Triano, T-r-i-a-n-o.

* * * * * *

"Q * * * What is your address?

"A 2302 East Fort Lowell.

"Q How long have you lived there?

"A I have lived there since June 11, 1973. June 12, I believe, excuse me.

"Q Where did you reside before that?

"A I lived at 6015 East Fourth Street.

* * * * * *

"Q Prior to June 12, 1973, are any of these addresses that you have just given me within Ward 3, as you know it?

"A Yes, sir.

"Q What ones?

"A 3346 East Fort Lowell.

"Q And when did you live there?

"A In September of 1966, for a little over a year.

"Q And since September of 1966, to approximately June of 1973, you have had no address that would appear to be within Ward 3, as it is presently constituted?

"A Residence address?

"Q Yes.

"A No, I haven't other than 2302 East Fort Lowell."

▪ We have read the record before the trial court together with the deposition of Gary Lee Triano and we find that the facts amply support the finding of the trial court that Gary Lee Triano was a resident at 2302 East Fort Lowell Road in Ward III of the City of Tucson, Arizona, at the time he reregistered on 3 July 1973, but that he had not resided within Ward III for one year as required by the City Charter and he does not come within the exception "unless such residence has been shortened by the redistricting of the city as to wards."

▪ Appellant Triano also contended that the one-year requirement of the City Charter was not limited to the time immediately prior to becoming a candidate, but for any one year period prior to becoming a candidate and that the year he resided in Ward III in 1966 would satisfy this requirement. We agree with the trial court that this is "an unreasonable and strained construction" of the Charter provision.

Judgment affirmed.

HAYS, C. J., LOCKWOOD, J., EUBANK, Court of Appeals Presiding Judge, and HAIRE, Court of Appeals Judge, concur.

STRUCKMEYER and HOLOHAN, JJ., did not participate in the determination of this matter and EUBANK and HAIRE, JJ., were called to sit in their stead.